IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NEDAL SHAHWAN,

    Petitioner,

  v.

MICHAEL CHERTOFF, et al.,

    Respondents
                                /

No. C-05-4218 MMC

**ORDER GRANTING APPLICATION FOR WRIT OF HABEAS CORPUS**

      Before the Court is petitioner's application for a writ of habeas corpus. The matter came on regularly for hearing on November 30, 2005. Stacy Tolchin and Marc Van Der Hout of Van Der Hout, Brigagliano & Nightingale, LLP, appeared on behalf of petitioner Nedal Shahwan. Ila C. Deiss, Assistant United States Attorney, appeared on behalf of respondents Michael Chertoff, Alberto Gonzales, and Nancy Alcantar.[1]

## BACKGROUND

      The U.S. Immigration and Customs Enforcement ("ICE"), in a Notice to Appear ("NTA") issued July 11, 2005, alleges petitioner is a citizen of Egypt who entered the United States on a student visa in January 1997. (See Deiss Decl., filed November 8, 2005, Ex. B at 3.) After his arrival in January 1997, petitioner filed with ICE's precedessor agency, the

---

[1] The Court, for the reasons stated at the hearing, dismissed respondents Edward Flores and Toby Wong.

1  Immigration and Naturalization Service ("INS"), an application to adjust his status to
2  become a permanent resident.  (<u>See</u> id. Ex. D).  While said application was pending,
3  petitioner, on one occasion in 1997 and on one occasion in 1998, requested and received
4  from the INS permission to travel to Saudi Arabia and thereafter enter the United States on
5  "parole."  (<u>See</u> <u>id</u>. Ex. E.)  On both occasions, the INS provided petitioner with a written
6  notice pertaining to such travel on parole.  (<u>See</u> <u>id</u>.)

   The 1997 notice, in relevant part, stated as follows:

> NOTE TO ALIEN: This authorization will permit you to resume your application for adjustment of status on your return to the United States. Acceptance of this advance parole constitutes a waiver of your right to a deportation hearing and you may be placed in exclusion proceedings upon your return.

(<u>See</u> <u>id</u>. Ex. E, second page.)

   The 1998 notice, in relevant part, stated as follows:

> NOTICE TO APPLICANT: Presentation of this authorization will permit you to resume your application for adjustment of status upon your return to the United States.  If your adjustment application is denied, you will be subject to removal proceedings under Section 235(b)(1) or 240 of the Act.  If, after April 01, 1997, you were unlawfully present in the United States for more than 180 days before applying for adjustment of status, you may be found inadmissible under Section 212(a)(9)(B)(i) of the Act when you return to the United States to resume the processing of your application.  If you are found inadmissible, you will need to qualify for a waiver of inadmissibility in order for your adjustment of status application to be approved.

(<u>See</u> <u>id</u>. Ex. E, fifth page.)

   On December 23, 1999, the INS denied petitioner's application for adjustment of status.  (<u>See</u> <u>id</u>. Ex. G.)  On June 23, 2000, the INS sent petitioner, by certified mail to his address of record in Oklahoma, an NTA, alleging he was deportable.  (<u>See</u> <u>id</u>. Ex. I.)  The United States Postal Service returned the NTA to the INS as "unclaimed," and noted on the face of the envelope petitioner's forwarding address in San Jose, California.  (<u>See</u> <u>id</u>.)  There is no indication the INS attempted to re-serve petitioner at his California address.

   On July 11, 2005, ICE issued an NTA, alleging petitioner is an "arriving alien" subject to deportation, and further alleging that on January 20, 2004 petitioner had falsely represented himself as a U.S. citizen on a passport application.  (<u>See</u> <u>id</u>. Ex. B.)  On July

12, 2005, petitioner was found guilty of "making a false statement in a passport application," (see id. Ex. L), in violation of 18 U.S.C. § 1542, see Docket, United States v. Shahwan, CR 04-20063 RMW. Thereafter, on July 12, 2005, petitioner was arrested by ICE agents, (see Deiss Decl. Ex. M), and later that same day, an ICE officer determined petitioner should be detained pending final determination of removal proceedings, (see id. Ex. N).

Petitioner was taken to Eloy, Arizona. (See id. Ex. O.) On July 28, 2005, in Eloy, Arizona, United States Immigration Judge John W. Davis ("IJ") conducted a hearing on petitioner's detention. (See id.) Prior to the hearing, petitioner filed a memorandum, supported by evidence, in which he argued, inter alia, that he was not a flight risk. (See Tolchin Decl. Ex. J.) On August 15, 2005, the IJ issued a written decision, finding that as a matter of regulation, he lacked authority to redetermine ICE's custody decisions as to an "arriving alien," (see Deiss Decl. Ex. O), and, accordingly, denied petitioner's request for reconsideration of his detention, on the ground of lack of jurisdiction, (see id.)[2]

On September 15, 2005, Thomas Baranick, ICE Acting Field Office Director in Phoenix, Arizona, issued a decision denying a request for parole that petitioner, through counsel, had filed with ICE on July 15, 2005, stating that petitioner "has proven to be a flight risk due to various inconsistencies located throughout his record." (See id. Ex P.)

On October 12, 2005, ICE transferred petitioner to a facility in the Northern District, (see Tolchin Decl., filed October 25, 2005, ¶ 13), wherein petitioner was detained at the time he filed the instant action, (see id. ¶ 15).

On October 24, 2005, petitioner's counsel received an undated letter from ICE, in which ICE denied a September 21, 2005 request by petitioner to be released on bond or on an electronic monitoring program, reiterating the finding set forth in ICE's September 15, 2005 decision, and also noting that because petitioner's "native country ha[d] not confirmed or substantiated his identity," petitioner was not eligible for the Intensive Supervision

---

[2]Subsequently, on October 17, 2005, the Board of Immigration Appeals affirmed the IJ's decision without opinion. (See id.)

3

Appearance Program.  (See id. Ex. P.)

**DISCUSSION**

When an alien is arrested on the ground he is removable, ICE "may" detain the alien or "may" release the alien on bond or parole.  See 8 U.S.C. § 1226(a).  Ordinarily, custody and bond determinations made by ICE are reviewable by an IJ.  See 8 C.F.R. §§1003.19(a), (b).  One exception, however, is that an IJ "may not redetermine conditions of custody imposed by [ICE]" as to "arriving aliens in removal proceedings."  See 8 C.F.R. § 1003.19(h)(2)(i)(B).  An "arriving alien" is "an applicant for admission coming to or attempting to come into the United States."  See 8 C.F.R. § 1.1(q).

Petitioner entered the United States on a student visa in January 1997, and thus was "admitted" at that time.  (See Deiss Decl. Ex. B, third page.)  Consequently, if petitioner subsequently had not left the United States, and had been arrested and placed in removal proceedings, petitioner would be eligible to have an IJ review any custody and/or bond determinations by ICE.  See 8 C.F.R. §1003.19(a); see also 8 C.F.R. § 1236.1(d)(1) (providing IJ may "detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the [alien] may be released").  As noted, however, petitioner, with permission, traveled on "advance parole."  (See Deiss Decl. Ex. E.)  When he returned to the United States on parole, he became an "arriving alien."  See Barney v. Rogers, 83 F. 3d 318, 321 (9th Cir. 1996) (analyzing claim where alien, who had illegally overstayed on student visa and was seeking to adjust status, had received permission to leave and return on parole; holding when alien was paroled upon return, "parole gave [alien] the right to return for the purpose of completing her Adjustment Application; it did not 'freeze' her status as an illegal overstay").

Petitioner does not deny he is an "arriving alien" as a matter of regulation.  Rather, he argues that application of 8 C.F.R. § 1003.19(h)(2)(i)(B), the regulation precluding an IJ's review of ICE's custody and bond determinations as to "arriving aliens," would deprive him of due process, because when he applied for advance parole, the INS did not notify him that he would be barred from having a bond hearing before an IJ if he was placed in

removal proceedings thereafter.

When petitioner applied for advance parole, he was an alien who had lawfully entered the United States on a student visa, and who, whether or not his presence thereafter remained lawful, was entitled to due process. See Shaughnessy v. United States, 345 U.S. 206, 207 (1953) (recognizing alien who enters United States, whether or not entry is legal, is entitled to due process); see also Carlson v. Landon, 342 U.S. 524, 534 (1952) (stating legally admitted "visitors" are "entitled in their persons and effects to the protection of our laws").

With respect to aliens who have traveled on advance parole, the Ninth Circuit has held that when the government seeks to remove such an alien, the government cannot deprive the alien of the rights that would have otherwise been available to him prior to leaving the country, if he was not given sufficient notice of the consequences of accepting advance parole. See Navarro-Aispura v. INS, 53 F. 3d 233, 236 (9th Cir. 1995) (holding INS could not place alien in exclusion, rather than deportation proceedings, where alien had departed and returned to United States on advance parole and INS notice as to when alien on advance parole could be placed in exclusion proceedings was "garbled" and "unintelligible" and thus "inadequate"); Patel v. Landon, 739 F. 2d 1455, 1457 (9th Cir. 1984) (finding alien was "trapped into exclusion status" when INS approved alien's request to travel on advance parole and did not provide notice to "sufficiently indicate" INS could place alien in exclusion rather than deportation proceedings if he so traveled and his application for adjustment of status were later denied; holding, as consequence, INS could not place alien in exclusion proceedings); accord Joshi v. District Director, INS, 720 F. 2d 799, 802-03 (4th Cir. 1983) (holding INS not entitled to place petitioner in exclusion proceedings, where notice provided to petitioner when he applied to travel on advance parole "did not notify [petitioner] that departure, travel, and return pursuant to the advance parole would result in the loss of entitlement to a deportation hearing"); cf. Barney, 83 F. 3d at 321 (rejecting argument that notice inadequate if alien not given "detailed explanation"; holding alien was "not misled or trapped" where INS expressly notified alien she would be

subject to exclusion proceedings if her then-pending application for adjustment was denied after her return on advance parole).

Here, respondents do not argue petitioner was not entitled to notice that if he traveled on advance parole, he would become ineligible to have a bond hearing before an IJ. Rather, respondents dispute petitioner's contention that the notices he was provided were inadequate. (See Resp'ts' Return in Opp., filed November 8, 2005, at 11:20-22.) Accordingly, the Court turns to the notices in question.

The 1997 notice, dated July 9, 1997, advised petitioner that if he traveled on advance parole, he would waive his right to a deportation hearing, and could instead be placed in "exclusion proceedings." Unlike the alien in Barney, however, at the time petitioner received the 1997 notice, the distinction between "exclusion" and "deportation" proceedings no longer existed; rather, as a result of a new statute, all aliens who were alleged to be unlawfully in the country were subject to "removal" proceedings. See 8 U.S.C. § 1229a; Twum v. INS, 411 F. 3d 54, 57 n.1 (2nd Cir. 2005) (holding, "effective April 1, 1997," formerly separate exclusion and deportation proceedings were replaced by "new unified 'removal' proceeding" as provided in 8 U.S.C. § 1229a).³ Under such circumstances, notice to petitioner that a consequence of travel on advance parole was that he could be placed in exclusion proceedings was not meaningful, or, put differently, it was "unintelligible," see Navarro-Aispura, 53 F. 3d at 236, given that the INS could no longer place anyone in exclusion proceedings.

The 1998 notice, dated May 5, 1998, advised petitioner, correctly, that if his adjustment application was later denied, he would be subject to "removal proceedings," and referenced §§ 235(b)(1), 240, and 212(a)(9)(B)(i) of the Immigration and Naturalization Act. At the hearing conducted November 30, 2005, the parties agreed that § 212(a)(9)(B)(i) is inapplicable to petitioner, and that § 235(b)(1), pertaining to expedited removal

---

³Where, as here, proceedings against an alien were instituted after April 1, 1997, the alien is subject to § 1229a, i.e., the alien is placed in removal proceedings, and is not subject to the statutes providing for placement in either exclusion or deportation proceedings. See Romani v. I.N.S., 146 F. 3d 737, 739 n .3 (9th Cir. 1998).

6

1  proceedings, does not apply to persons on advance parole.  Consequently, the remaining
2  section is § 240, which sets forth procedures applicable in removal proceedings.  Section
3  240, codified as 8 U.S.C. § 1229A, does not refer, in any manner, to the subject of
4  detention,[4] and is applicable to all persons in removal proceedings, whether or not they are
5  classified as "arriving aliens."  In short, the 1998 notice did no more than advise petitioner
6  he would be subject to removal proceedings if his application for adjustment of status was
7  denied, proceedings to which petitioner would have been subject irrespective of whether he
8  accepted advance parole.  In other words, the 1998 notice failed to advise petitioner that he
9  would be subject to any adverse consequence as a result of traveling on advance parole.

10       In sum, in 1997 petitioner received an unintelligible notice concerning outdated
11 procedures and in 1998 received a notice indicating only that he would be subject to the
12 same consequences to which he would have been subject had he not traveled on advance
13 parole, namely, removal proceedings.  Under such circumstances, the Court finds petitioner
14 did not receive any notice, let alone adequate notice, that if he traveled on advanced
15 parole, he would be subject to detention without the possibility of a bond hearing before an
16 IJ, and, accordingly, respondents are not entitled to apply 8 C.F.R. § 1003.19(h)(2)(i)(B) to
17 petitioner.[5]  See Navarro-Aispura, 53 F. 3d at 236; see also Martinez-De Bojorquez v.
18 Ashcroft, 365 F. 3d 800, 804 (9th Cir. 2004) (holding where BIA failed to advise alien of
19 such regulation, BIA violated alien's right to due process in applying regulation providing for
20 dismissal of appeal from deportation order where alien departs country during pendency of
21 appeal).
22 //
23 //
24 //
25

---

26     [4]Neither § 235(b)(1) nor § 212(a)(9)(B)(i) refers, in any manner, to detention of
27 persons in removal proceedings.

28     [5]In light of this finding, the Court does not consider the alternative arguments raised by petitioner as to the enforceability of § 1003.19(h)(2)(i)(B).

7

## CONCLUSION

For the reasons stated above, petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is hereby GRANTED.  Respondents shall promptly provide petitioner with a bond hearing before an immigration judge.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  December 12, 2005

MAXINE M. CHESNEY
United States District Judge